UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| ROBBIE MCCLURKIN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case Number: 4:13-cv-00841-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

## **MEMORANDUM OPINION**[1]

Plaintiff Robbie McClurkin ("McClurkin") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  McClurkin timely pursued and exhausted her administrative remedies.  The case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).  The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

McClurkin was a thirty-nine year old female at the time of the Administrative Law Judge ("ALJ") decision. (Tr. 30).  McClurkin has up to an eighth-grade education and previously worked as a convenience store clerk. (Tr. 30, 73-74).

McClurkin filed her application for a period of disability, DIB, and SSI on January 21,

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 13).

2009, alleging an initial onset date of August 1, 2008. (Tr. 27, 239). The Commissioner denied McClurkin's application, (Tr. 148-157), and McClurkin requested a hearing before an ALJ. (Tr. 164). After a hearing, the ALJ denied McClurkin's claim on March 23, 2011. (Tr. 55). McClurkin sought review by the Appeals Council, but it declined her request on March 1, 2013. (Tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On May 3, 2013, McClurkin initiated this action. (*See* doc. 1).

## II.  Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine, in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2013.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found McClurkin met the insured status requirements of the Social Security Act through June 30, 2009, and that McClurkin had not engaged in substantial gainful activity since August 1, 2008, the alleged onset date of her disability. (Tr. 45). At Step Two, the ALJ found McClurkin has the following severe impairments: shoulder pain; degenerative disc disease; borderline intelligence; and recurrent, major depression. (*Id.*) At Step Three, the ALJ found McClurkin does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Before proceeding to Step Four, the ALJ determined McClurkin's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined McClurkin has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), but is restricted to occasional bending and stooping and no climbing; furthermore, the ALJ found McClurkin precluded from left shoulder

pushing or pulling; needs a sit/stand option; and is to work in a setting where only simple and repetitive, non-complex tasks are given. (Tr. 48).

At Step Four, the ALJ determined McClurkin is unable to perform any past relevant work. (Tr. 53). At Step Five, the ALJ determined, based on McClurkin's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy McClurkin could perform. (Tr. 54). Therefore, the ALJ determined McClurkin has not been under a disability and denied McClurkin's claim. (Tr. 55).

## V. Analysis

Although the Court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)[4]). The Court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination McClurkin failed to demonstrate a disability. McClurkin contends the ALJ's erred by giving improper weight to the consultative examination reports of Drs. Jane Teschner and David Wilson; giving no weight and failing to explain the significance of state vocational evaluations; and failing to develop the record. (Doc. 14 at 5). She further contends the Commissioner failed to meet its burden of proof claimant could perform other work and the denial is not supported by substantial evidence

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

considering evidence submitted to, but ignored by, the Appeals Council.  (*Id.*)  The record indicates otherwise.

### A. The ALJ Did Not Err in Giving Less Weight to the Consultative Examination Reports of Drs. Wilson and Teschner

McClurkin first states Dr. Wilson, a psychologist, performed a consultative exam and his report showed "major depression recurrent, low IQ and a GAF of 50,"[5] which was supported by McClurkin's testimony at the hearing and the medical records of treating physicians.  (Doc. 14 at 17-20).  She then states Dr. Teschner performed a consultative examination and found her to be "'totally disabled' due to her severe lumbosacral pain with right hip pain, paresthesia, sciatica, lumbar radiculopathy, degenerative disc disease of the lumbosacral spine with herniated/bulging discs, severe cervical pain, severe left shoulder pain, severe degenerative disc disease of the cervical spine, severe sacroiliitis, fatigue, and diverculitis."  (*Id.* at 20).  McClurkin does not explain what the "proper" weight would be for the reports or how that might be affected by the ALJ's discussion of the circumstances surrounding them.  She merely states "[t]he ALJ cannot substitute his opinion for that of a trained medical professional."  (*Id.* at 20).  The remainder of the analysis is an *ad hominem* attack on the ALJ, citing extensively to a series of cases in which the ALJ in this case is explicitly overruled for "substituting his opinion for the opinion of medical professionals."  (*Id.* at 20-22).  She does not explain how these cited cases are relevant to what the ALJ specifically did here.

The Commissioner responds, asserting the ALJ properly granted reduced weight to the two consultative exam reports.  First, the Commissioner explains the ALJ discussed Dr. Wilson's report and "properly granted it reduced weight" because the report was inconsistent with the evidence in the record, appeared to rely heavily on Plaintiff's subjective report of symptoms and limitations, and was

---

[5] A GAF Score of between 41 and 50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *See* http://gafscore.com (last visited September 30, 2014) (bold in original).

conducted based on an attorney referral in an effort to generate evidence for this appeal.  (Doc. 15 at 9-10) (citing Tr. 51-53).  Next, the Commissioner acknowledges the ALJ did not explicitly state the weight afforded to Dr. Teschner's opinion of McClurkin's limitations but states the ALJ implicitly rejected Dr. Teschner's opinion and, because it was not entitled to any special weight, any error is harmless.  (*Id.* at 10-11).

Under 20 C.F.R. § 404.1527(c)(2), a treating physician's opinion is given controlling weight where it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  Accordingly, "[t]he ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, there is no such requirement for nontreating physicians.  *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("[T]heir opinions are not entitled to deference because as one-time examiners they were not treating physicians."); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("[T]his requirement [to state good cause for giving less weight] only applies to treating sources.  With regard to nontreating, but examining, sources, the agency will simply '[g]enerally [ ] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined' him." (quoting 20 C.F.R. § 404.1527(d)(1)).  *Cf.* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your *treating* source's opinion." (emphasis added)).  McClurkin does not contend Dr. Wilson or Dr. Teschner are treating physicians; therefore, they receive no special deference, and not giving explicit reasons for discounting their opinions is not reversible error.  Similarly, an opinion from a physician of any type on an issue reserved to the Commissioner is not considered a "medical opinion" at all

and does not receive any special significance.  20 C.F.R. § 404.1527(d).

### 1. Dr. Wilson's Report

Dr. Wilson's consultative report was not improperly discounted as the ALJ's determination was based on substantial evidence and the proper application of the legal principles.  As a non-treating physician, his opinion was entitled to no special weight or explanation requirement, but the ALJ addressed his findings extensively and found his opinion worthy of less weight because his examination was done pursuant to a referral designed to acquire additional evidence in this case, his opinion was not in line with the wider record, and he appeared to rely heavily on McClurkin's subjective reports, the credibility of which the ALJ questioned elsewhere in the decision.  (Tr. 52-53).

The ALJ noted that, other than a Lexapro prescription, McClurkin had sought no treatment for her depression, (tr. 51); that she was capable of carrying out daily activities, including overseeing her son's health and going out unaccompanied, (tr. 51); and that Dr. Wilson's opinion conflicted with the opinion of another psychologist, Dr. Jon Rogers, to whose report the ALJ gave more weight, (tr. 52).  Dr. Rogers reported McClurkin, though exhibiting a depressed mood, "presented with a cooperative attitude, normal mental activity and speech, and with fair judgment and insight," as well as being able to concentrate and pay attention and capable of abstract thought.  (Tr. 37) (citing tr. 621-26).  He gave her a global assessment of functioning ("GAF") score of 55,[6] "indicating that [McClurkin]'s impairments pose a moderate limitation on [her] ability to work."  (*Id.*) (citing tr. 621-26).

McClurkin argues "Dr. Wilson's opinion is supported by "Claimant's testimony at the

---

[6] **Error! Main Document Only.**A GAF between 51 and 60 indicates "**[m]oderate symptoms** (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (*e.g.*, few friends, conflicts with peers or co-workers)."  See http://gafscore.com (last visited September 30, 2014) (bold in original).

hearing," (doc. 14 at 18); however, as the Commissioner points out, (doc. 15 at 10), it is exactly this connection between her subjective statements, which the ALJ found not credible, and Dr. Wilson's opinion upon which the ALJ partially based the reduction in weight given to Dr. Wilson's opinion, (tr. 52-53).  McClurkin also argues "Dr. Wilson's opinion was supported by medical records of treating physicians," citing to records indicating diagnoses of depression and anxiety, (doc. 14 at 19); however, it is not the depression and anxiety diagnosis the ALJ discredited but the extent to which that diagnosis affected McClurkin's daily functioning.  The ALJ expressly credited Dr. Rogers's opinion, (tr. 52), and he also diagnosed McClurkin with depression and anxiety disorders, (tr. 37).  The cited records support Dr. Rogers's opinion, upon which the ALJ's RFC is based, as much as they support Dr. Wilson's.

The ALJ's decision to give less weight to Dr. Wilson's opinion is supported by substantial evidence and was not improper.

### 2.  Dr. Teschner's Report

As with Dr. Wilson's report above, Dr. Teschner's consultative report was not improperly discounted as that determination was based on substantial evidence and the proper application of the legal principles.  As McClurkin asserts and the Commissioner acknowledges, the ALJ did not clearly articulate grounds for discounting Dr. Teschner's report; however, like Dr. Wilson, her opinion as a non-treating physician was entitled to no special weight or explanation requirement.  In addition, there is evidence from other consultative medical sources entitled to the same deference as Dr. Teschner to which the ALJ explicitly gave greater weight and which support the ALJ's RFC.  (*See* tr. 42-43, 382-94 (Dr. Born's consultative examination report)).  Furthermore, the only portion of the report to which McClurkin cites is the portion of it to which the ALJ is, by rule, to give no special weight at all (Dr. Teschner's conclusion

McClurkin is "totally disabled"). (Doc. 14 at 20). The ALJ did not "substitute his opinion for that of a trained medical professional," as McClurkin asserts; he substituted the opinion of Dr. Born, a trained medical professional, for that of Dr. Teschner, who, immediately before giving her conclusion, belittled her own opinion by stating McClurkin needed "an evaluation by a savvier, more experienced doctor," (tr. 652). The ALJ's decision to give less weight to Dr. Teschner's opinion is supported by substantial evidence and was not improper.

**B. The ALJ Did Not Err in Giving Reduced Weight to the State-Sponsored Vocational Evaluations Without Explanation**

McClurkin cites to vocational evaluations from the Huntsville Rehabilitation Center that "determined that she did not have the potential for returning to work or employment." (Doc. 14 at 22). McClurkin then states the ALJ "disregarded these reports without an explanation," and asserts, "[j]ust as an ALJ cannot ignore medical opinions, and [sic] ALJ cannot ignore vocational opinions." (*Id.*) McClurkin presents no argument for her statement the ALJ "ignored" the vocational opinions and submits no authority for the implied proposition an ALJ must explicitly address a vocational counselor's opinion. McClurkin "has waived this issue because [she] did not elaborate on this claim or provide citation to authority about this claim." *Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006); *accord N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").[7]

---

[7] Even if the issue is addressed, as the Commissioner observes, (doc. 15 at 12 n.11), the rehabilitation service's evaluators are not "acceptable medical sources" under 20 C.F.R. § 404.1513(a) and, therefore, are "not entitled to any special consideration." *Berkel v. Colvin*, No. 1:12-CV-03558-AJB, 2014 WL 806864, at *11 (N.D. Ga. Feb. 27, 2014). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered plaintiff's medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotation marks omitted). The

**C. The Vocational Expert's Testimony is Not Based on an Inaccurate or Incomplete Hypothetical Question**

McClurkin next asserts that, although the ALJ may rely on a vocational expert's answer to a hypothetical question as substantial evidence, he may do so only "so long as the question takes into account the claimant's precise condition and limitations." (Doc. 14 at 23) (quoting *Holley v. Chater*, 931 F. Supp. 840, 851 (S.D. Fla. 1996)). McClurkin contends the ALJ's hypothetical was inaccurate because it assumed an ability to perform light work but "[t]here is no medical evidence that claimant can work or perform light work." (*Id.* at 23-24).[8]

The ALJ determined McClurkin was not able to perform a full range of sedentary work and listed those limitations in his RFC, stating "she is restricted to occasional bending and stopping and no climbing," "is precluded from left shoulder pushing and pulling," "needs a sit/stand option and is to work in a setting where only simple and repetitive, non-complex tasks are given." (Tr. 48). The ALJ posed the following hypothetical to the vocational expert:

> Q All right, now, I want you to assume that I find from the evidence that we have a younger individual with a limited education, let's say who could perform light work, except with the following limitations. She's *restricted to occasional bending and stooping*, no – we'll say *no climbing*, *no left shoulder*

---

vocational assessments conflict with the opinions of acceptable medical sources, (tr. 374-94), and appear to be based heavily on McClurkin's subjective statements, (tr. 618-20). These are the same reasons the ALJ gave for giving reduced weight to Dr. Wilson's report, (tr. 52-53). The ALJ not providing specific statements regarding the weight given to the counselors' evaluation does not indicate he did not consider McClurkin's medical condition as a whole, especially in light of his description of that evaluation in his decision, (tr. 38), and his explicit reliance on the reports of examining physicians, (tr. 52).

[8] McClurkin also asserts the hypothetical was incomplete because it did not consider her "severe scoliosis of the thoracic spine, severe right elbow pain due to tendonitis, acute gouty arthritis, generalized anxiety disorder, asthma and shortness of breath due to chronic obstructive pulmonary disease, severe abdominal pain due to sigmoid colon diverticulitis and holes in intestine, fatigue, and chest pain with heart palpitations." (Doc. 14 at 23). "However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

>    *pushing and/or pulling*, let's say *simple, repetitive, noncomplex tasks*.
>    ...
>
>    Q. Mr. Hare, tell me if there would be any *sedentary* opportunities that you believe Ms. McClurkin could perform, please?
>
>    A. I would say, Your Honor, such jobs as stuffer as in pillows or stuffed animals. There's approximately 2,000 in Alabama, 390,000 in the nation.... I would say nut sorter. It's sedentary, unskilled, 650 in Alabama, 40,000 in the nation. And that's what I see for her in the sedentary category.
>
>    Q. Mr. Hare, let's go back to the original ["light work"] hypothesis. I want you to consider that I'm determining Ms. McClurkin should be permitted to *sit and/or stand at her own option* if I determine that limitation would be appropriate....
>
>    Q. I see. What about the impact, if any, on her ability to do the *sedentary* stuffer and nut sorter position?
>
>    A. No, on the nut sorter, yes on the stuffer.

(Tr. 95-97) (emphasis added). Altogether, this final testimony by the vocational expert was based on a hypothetical assuming a claimant with the ability to perform only sedentary work with a sit/stand option but restricted to occasional bending and stooping, no climbing, no left shoulder pushing or pulling, and only simple, repetitive, noncomplex tasks. This hypothetical mirrors the ALJ's ultimate findings; therefore, the hypothetical is not inaccurate or incomplete and could be relied upon as substantial evidence.

### D. The New Evidence Submitted to the Appeals Council and the Appeals Council's Refusal to Grant Review Does Not Entitle McClurkin to Remand

McClurkin asserts she presented new, noncumulative, and material evidence to the Appeals Council after the ALJ's decision, which the Appeals Council did not adequately evaluate. (Doc. 14 at 26-28). McClurkin argues the Appeals Council's "review is purely conclusory, and it epitomizes 'perfunctory adherence' to the ALJ decision." (*Id.* at 28). The Commissioner asserts the evidence is not new, noncumulative, or material. (Doc. 15 at 18-21).

The Eleventh Circuit has addressed the issue of judicial review of new evidence submitted to the Appeals Council as follows:

> The Appeals Council has discretion not to review the ALJ's denial of benefits; however, if the claimant submits new noncumulative and material evidence to the Appeals Council after the ALJ's decision, it must consider such evidence where it relates to the period on or before the date of the ALJ's hearing decision. 20 C.F.R. § 404.970(b); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Appeals Council must adequately evaluate the new evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980). Where the Appeals Council does not adequately evaluate new evidence, but instead perfunctorily adheres to the ALJ's decision, the Commissioner's findings are not supported by substantial evidence. *Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).
>
> . . . When new evidence is submitted to and accepted by the Appeals Council and it denies review, the district court conducts a new review of the evidence independently of the Appeals Council. [*Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1266 (11th Cir. 2007)]. The district court must consider the new evidence submitted to the Appeals Council and determine whether the Commissioner's decision is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b); *Id.* "[B]ecause a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v. Comm'r of Soc. Sec.,* 420 Fed. App'x. 901, 903 (11th Cir. 2011) (per curiam) (citing *Ingram,* 496 F.3d at 1262).

*Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 941 (11th Cir. 2014). The new evidence McClurkin submitted to the Appeals Council here is neither noncumulative nor material; therefore, the Appeals Council did not err by refusing to evaluate evidence neither new nor material, and the Commissioner's decision is not contrary to the weight of the evidence currently of record.

As the Commissioner points out, (doc. 15 at 17 n.13), the new evidence consists primarily of treatment notes. (Tr. 664-723). McClurkin describes these notes as showing diagnoses of depression, pain, degenerative disc disease, radiculopathy, and diverticulitis, (doc. 14 at 12-16); however, the medical records and consultative reports the ALJ previously considered acknowledged these already, (tr. 374) (in which Dr. Heilpern describes a primary

13

diagnosis of diverticulitis); (tr. 384) (in which Dr. Born acknowledges depression, lower back and shoulder pain, and diverticulitis); (tr. 476) (indicating Quality of Life Health Services' diagnosis of degenerative disc disease); (tr. 565) (in which Dr. Flowers indicates left cervical radiculopathy); (tr. 612) (in which Dr. Palmer describes McClurkin's MRI as "consistent with degenerative disc with annular bulges predominantly at the 4-5 level"). Furthermore, McClurkin cites nothing in the additional evidence "reveal[ing] the extent to which [these impairments] limit her ability to work." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *see also Caces*, 560 F. App'x at 941 ("Even though Dr. Kabakibou diagnosed Caces with failed back syndrome, low back pain, and other conditions before and after the insured status expired, *he never indicated any functional limitations or work restrictions*, nor did he consider Caces disabled, at any time on or before December 31, 2006." (emphasis added)).

The new piece of evidence upon which McClurkin appears to primarily rely is a DeKalb County Department of Human Resources form for determining mental/physical capacity hardship. (Doc. 14 at 25) (citing tr. 724-26). McClurkin argues this is the evaluation of a treating physician, Dr. Francis Koe, who stated, "patient's condition is such as to prevent or substantially reduce her ability to work even part time." (*Id.*) (citing tr. 725). More fully, Dr. Koe checked a box to that effect as opposed to the only other available checkbox indicating McClurkin's "shoulder pain" would have "[n]o affect on employment." (Tr. 725).

McClurkin asserts Dr. Koe's opinion, as that of a treating physician, is entitled to great weight or explicit explanation as to the reasons for giving it less weight, (doc. 14 at 25); however, that is only true where it is a medical opinion. Where it is, as here, an opinion not describing the limitations an impairment causes but instead a conclusory statement about her "ability to work," it is, by rule, given no special weight. *See* 20 C.F.R. § 404.1527(d)(1) ("[The

14

Commissioner] [is] responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability.... A statement by a medical source that [the claimant] [is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("While [the examining physician] generally opined that if untreated, [claimant]'s condition would likely prevent her from maintaining gainful employment, this was not a medical assessment, but simply an opinion on an issue reserved to the Commissioner's discretion.").

Perhaps more importantly, even if Dr. Koe's opinion were given controlling weight, the conclusory and boilerplate nature of the "opinion" makes it entirely useless for purposes of determining social security disability. Dr. Koe checked the box stating McClurkin's shoulder pain would "prevent *or substantially reduce* []her ability to work." (Tr. 725). A substantial reduction in her ability to work (as opposed to no affect at all) is entirely consistent with the ALJ's determination she required sedentary work with additional limitations. There is not a reasonable possibility this evidence would change the administrative result. The Commissioner's decision is not contrary to the great weight of the evidence currently of record.

### E. The ALJ Did Not Fail to Properly Develop the Record

McClurkin supports her assertion that the ALJ failed to develop the record by listing the records she submitted after the ALJ's decision and marking with an asterisk those records referencing treatment prior to that decision. (Doc. 14 at 28-29). McClurkin cites extensively to cases stating the ALJ has a duty to fully and fairly develop the record but presents no argument to explain why the records she submitted to the Appeals Council show such a failure. (*See id.*). As a result, this claim is waived. *See Outlaw v. Barnhart*, 197 F. App'x at 828; *N.L.R.B. v.*

*McClain of Georgia, Inc.*, 138 F.3d at 1422. Regardless, as explained above, the medical records to which McClurkin cites do not present new noncumulative and material evidence; therefore, their absence from the record does not create an incomplete or unfair record.

## VI. Conclusion

Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, the Commissioner's decision is **AFFIRMED** and this action will be **DISMISSED WITH PREJUDICE**. A separate order will be entered.

**DONE,** this 1st day of October, 2014.

_____
**JOHN E. OTT**
CHIEF UNITED STATES MAGISTRATE JUDGE